UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ZACHARIAH C. KISKADEN,

Plaintiff,

v.                                                  CAUSE NO. 3:25-CV-830-CCB-SJF

CORIZON MEDICAL, et al.,

Defendants.

## OPINION AND ORDER

Zachariah C. Kiskaden, a prisoner without a lawyer, filed a second amended complaint. ECF 20. Procedurally, Kiskaden should have sought leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). However, in the interests of justice, the court will accept his filing as both a motion and a proposed second amended complaint. Because leave to amend should be freely given, *Liu v. T&H Machine*, 191 F.3d 790, 794 (7th Cir. 1999), the clerk will be directed to docket it as the operative complaint, and the court will proceed to screen it.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Kiskaden's second amended complaint alleges he has been on a documented, medically prescribed egg-free diet within the Indiana Department of Correction for over twenty years. Since arriving at the Indiana State Prison (ISP), he has "continuously had issues" receiving the correct diet.[1] ECF 20 at 5. He believes "any and all Centurion Health employees" at ISP "should ha[ve] known of Plaintiff's chronic egg allergy" since he went through the reception health screening when he arrived. *Id*. Kiskaden claims Nancy Marthakis, M.D., and D. Laughlin, R.N., failed to review his reception screening and/or medical history, which prevented him from being placed into the Continuity of Care and Chronic Care Programs. These programs are designed to "prevent any lapse in treatment and/or prevention of an allergic attack." *Id*. at 6.

At some point after he arrived (he doesn't say exactly when), his medically prescribed egg-free diet expired at ISP. Instead of immediately correcting it "by calling the Food Service and plac[ing] the order verbally," Dr. Marthakis and Nurse Laughlin chose to email or send the renewal through interdepartmental mail. *Id*. at 6. Kiskaden believes this prolonged the lapse in his egg-free diet which caused "undue hardship, specifically, his well being and physical being." *Id*. He claims he "suffers from anxiety and mental distress" at each meal knowing he could be subjected to an allergy attack or be forced to eat less food than the normal daily caloric intake. *Id*. Kiskaden says during

---

[1] In his original complaint—which was signed and declared under penalty of perjury—he stated his issues at ISP began on October 1, 2023, when he was sent to segregation (D-cell house) for threatening an officer. *See* ECF 1 at 3. His diet wasn't fixed until he was released from segregation approximately four months later. *Id*. at 4. He claimed his diet again "ran out" in July of 2025 for "over 2 months." *Id*. at 4–5. Overall, he claimed he had been "without my diet (medical) for close to 5 months in the last two years." *Id*. at 5.

2

the times he doesn't receive the correct caloric intake, he experiences hunger pains, lightheadedness, fatigue, lethargy, and weight loss. Kiskaden has tried to prevent the lapse in his prescribed diet by filling out healthcare requests and grievances, but they have been ignored.

Kiskaden also claims the supervisors in the prisoners' dining room—Theresa Johnson, Wayne Peeples, and Greer—have been negligent because they don't properly oversee the food on his tray to make sure it comports with his medically prescribed egg-free diet. However, it's unclear when the medically prescribed egg-free diet was actually in place at ISP since Kiskaden claims it was allowed to lapse. He describes only one incident, on February 3, 2024, where Correctional Officer Johnson brought Kiskaden a tray with eggs on it. Kiskaden filed a grievance stating Officer Johnson was "unprofessional" in the performance of his duties and indifferent to Kiskaden's medical needs. *Id.* at 8.

At some point, Kiskaden told Dr. Marthakis that the kitchen supervisors weren't ensuring his trays were egg free. He asked her for an "allergy pen," but she refused. *Id.* at 9. When he told her he wasn't receiving the correct calorie count each day, she responded by saying, "You won't starve." *Id.* Kiskaden has sued Centurion Health, Dr. Nancy Marthakis, Nurse D. Laughlin, Food Supervisor Theresa Johnson, Food Supervisor Wayne Peeples, Food Supervisor Greer, Warden Ron Neal, Grievance Specialist Joshua Wallen, and Correctional Officer Johnson for "punitive and compensatory damages." *Id.* at 11.

3

Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they

4

entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotation marks omitted).

With regard to non-medical prison officials, they generally don't violate the Constitution it they "reasonably relied on the judgment of medical personnel." *Eagan v.*

*Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (quoting *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018)). While prison officials are "presumptively entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care[,]" they may not ignore a prisoner's complaints entirely or refuse to act if they know the medical staff is failing to treat the prisoner. *Id*. (internal quotation marks and citations omitted). That said, "[a]n official's 'mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient.'" *Id*. (quoting *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)).

Kiskaden has plausibly alleged his egg allergy is an objectively serious medical need—he claims he has an allergic reaction when he eats eggs and experiences hunger pains, lightheadedness, fatigue, lethargy, and weight loss when he isn't given sufficient egg-free options. With regard to whether the defendants have been deliberately indifferent to those needs, he claims Dr. Marthakis and Nurse Laughlin overlooked relevant medical documentation at intake, ignored multiple healthcare requests, and have continually delayed the re-implementation of his egg-free diet after it lapses. The exhibits attached to the second amended complaint show his egg-free diet has been renewed several times,[2] so it's clear Kiskaden's needs are not being wholly ignored.

---

[2] *See* ECF 20-1 at 11 (healthcare request dated December 5, 2023, with notation by Nurse Laughlin dated December 7, 2023, stating, "Diet renewed – we need to obtain blood test showing egg allergy remains. Please do not refuse lab draw. Diet is only good for 2 months."); *Id*. at 17 (healthcare request dated February 15, 2024, with a response by Nurse Laughlin dated February 15, 2024, stating, "Your egg free diet was sent to PDR on 2/14/2024."); *Id*. at 22 (grievance dated November 11, 2025, by Kiskaden complaining about not receiving items like pepper, salt, and jelly on his trays and stating "I am currently on a no egg diet . . .. They are simply taking eggs off the tray and writing no eggs on it."); *Id*. at 25 (healthcare request dated November 11, 2025, with a response stating, "Provider submitted paperwork we are just awaiting approval."); *Id*. at 26 (healthcare request by Kiskaden dated January 4, 2025, noting his "diet expired while at court" with a response stating, "Got it. Diet sent to PDR. No Charge."); *Id*. at 27

6

That said, Kiskaden must be given the benefit of all reasonable inferences during the screening process, and his allegations of repeated delay are enough to state a plausible claim at this early stage. *See, e.g., Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates an inmate's medical condition or unnecessarily prolongs suffering.") (citations and quotation marks omitted)).

Kiskaden's claims against the remaining defendants do not fare as well. He has sued Centurion Health, but Centurion cannot be held liable solely because it employed medical staff involved in his care. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). Nor has he alleged sufficient facts to state any sort of plausible claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). This corporate defendant will be dismissed.

Kiskaden has sued Warden Neil because he oversees the prison and allegedly failed to respond to requests sent to the administrative office, but there is no *general respondeat* superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009); *see also Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)). Moreover, "the division of

---

(healthcare request by Kiskaden noting "My diet ran out last month" with a response by Nurse Laughlin dated September 11, 2025, stating, "Did not attend scheduled NSC visit."); *Id.* at 28 (healthcare request by Kiskaden dated September 23, 2025, noting, "My diet ran out two months ago" with a response dated September 25, 2025, stating, "Fer (sic) came back diet card sent out 9/22/25 HP Egg Free Diet.").

labor is critical to the efficient functioning of the [prison] organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017); *see also Eagan*, 987 F.3d at 694 (non-medical officials entitled to defer to medical professionals' judgment when individual is being monitored and treated by medical department). The claims against the Warden will be dismissed.

Kiskaden has sued food service supervisors Theresa Johnson, Wayne Peoples, and Greer for not properly overseeing his medically prescribed food trays. However, other than oversight, Kiskaden doesn't explain their roles or describe any specific actions they took. As noted above, there is no *general respondeat* superior liability under 42 U.S.C. § 1983, and defendants can't be liable for constitutional violations if they didn't cause or participate in them. *Burks*, 555 F.3d at 594; *Moderson*, 137 F.4th at 617. Moreover, while Kiskaden claims generally that he has received trays with egg products on them, he doesn't clarify when these instances occurred.[3] This is problematic not only because of its vagueness, *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law"), but also because the main thrust of his complaint is that the medical department let his order for an egg-free diet repeatedly lapse. Neither the food service supervisors nor their employees can be held constitutionally liable for serving

---

[3] His second amended complaint describes one instance on February 3, 2024, when Correctional Officer Johnson brought him a tray with egg on it, but that one instance—wherein he doesn't allege he suffered an allergy attack or any other harm related to it—doesn't establish a constitutional violation either against the supervisors or against Officer Johnson.

Kiskaden eggs when the food order in the system doesn't require an egg-free diet. The claims against these defendants will be dismissed.

Kiskaden has sued Grievance Specialist Joshaua Wallen for allegedly failing to respond to his grievances in a timely manner, but the mishandling of grievances and/or the lack of a functioning grievance process does not state a constitutional claim. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure); *see also Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 F. App'x 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state actors to enforce their own policies and regulations.") (citing *Garcia v. Kankakee Cnty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)). The claims against Grievance Specialist Wallen will also be dismissed.

As a final matter, Kiskaden has filed a separate motion for preliminary injunction. A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v.*

*CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763 (quotation marks omitted). In assessing the merits, the court need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[4] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully,* 977 F.3d at 613 (quotation marks omitted).

---

[4] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

10

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

In his motion, Kiskaden adds additional information that is not alleged in his complaint. He says he was served eggs several times in May of 2026 despite finally being on an appropriately documented "egg free medically prescribed allergy diet" since April. ECF 21-1 at 1. He claims he accidentally ate some eggs on May 27, 2026, and had an "allergic reaction [that] was treated by medical." *Id*. He doesn't say who prepared the food or served him the tray. He provides a copy of a "prescribed diet card" from medical that is good from April 14, 2026, through October 14, 2026. *Id*. at 8. Kiskaden states he plans on moving forward with "a personal injury or additional 1983 suit once I do a little more research," but at this point he is "simply asking the court to order Aramark to refrain from serving me eggs and to fix how my tray is prepared." *Id*. at 3–4.

The new allegations in Kiskaden's motion appear to be at least partly contradictory to the ones in his complaint, as he now suggests the medical defendants are no longer depriving him of constitutionally adequate medical care because they

11

have issued him a diet card that is good through October. Speculation that the egg-free diet may again be allowed to lapse in the future isn't a sufficient basis to grant a motion for prospective preliminary injunctive relief. *See, e.g., Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1325 (7th Cir. 2022) ("Even more, though, and like the district court, we have a hard time seeing this alleged harm as anything but speculative—too much so to warrant the extraordinary remedy of preliminary injunctive relief."). To the extent Kiskaden is now claiming the problems lie with Aramark rather than the medical defendants, as set forth in detail above, Kiskaden hasn't stated any plausible claims against the food service supervisors, nor has he named Aramark as a defendant. Of note, his second amended complaint seeks only monetary damages. His motion mentions several dates on which he was given a tray with eggs on it despite his now correctly documented egg-free diet but only one recent instance since his arrival at ISP several years ago of an allergic attack, which he admits was promptly treated. Based on the facts set forth in his motion—which include conduct, occurrences, and relief not sought in the operative complaint plus allegations that appear contrary to part of it—Kiskaden hasn't sufficiently alleged the extraordinary remedy of preliminary injunctive relief is warranted in this case. *See Ill. Republican Party*, 973 F.3d at 763 ("a mere possibility of success is not enough"); *Univ. of S. Ind.*, 43 F.4th 791 (in assessing the merits, the court need not accept all allegations as true or grant plaintiff all inferences in his favor). Therefore, the motion will be denied.

For these reasons, the court:

(1) **DIRECTS** the clerk to docket ECF 20 as the operative second amended

12

complaint;

(2) **GRANTS** Zachariah Kiskaden leave to proceed against Nancy Marthakis, M.D., and D. Laughlin, R.N., in their individual capacities for compensatory and punitive damages for repeatedly denying and/or delaying Kiskaden his medically necessary egg-free diet from October 1, 2023, to April 14, 2026, in violation of the Eighth Amendment;

(3) **DISMISSES** all other claims;

(4) **DISMISSES** Centurion Health, Food Service Supervisor Theresa Johnson, Food Service Supervisor Wayne Peoples, Food Supervisor Greer, Warden Ron Neal, Grievance Specialist Joshua Wallen, and Correctional Officer Johnson, PM Shift;

(5) **DIRECTS** the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nancy Marthakis, M.D., and D. Laughlin, R.N., at Centurion Health of Indiana, LLC, with a copy of this order and the second amended complaint (ECF 20);

(6) **ORDERS** Centurion Health of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(7) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Nancy Marthakis, M.D., and D. Laughlin, R.N., to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(8) **DENIES** the motion for preliminary injunctive relief (ECF 21).

SO ORDERED on June 15, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT